*3 HECHT, Justice.
After making a routine traffic stop for an expired license plate,, a police officer smelled marijuana and confiscated one marijuana blunt from the motorist. The officer ordered the motorist from the vehicle and arrested him for possession of marijuana. After the motorist and his passenger were placed in a squad car, a search of the passenger compartment at the scene of the arrest revealed a small portable locked safe. A police officer opened the safe without obtaining a search warrant and discovered additional marijuana, drug paraphernalia, and a gun. The motorist was charged with possession of marijuana with intent to deliver, failure to affix a drug tax stamp, and knowingly-transporting a revolver in a vehicle. The district court denied the motorist’s motion to suppress the contents of the locked container under the Federal and State Constitutions and convicted the motorist of the charges. Upon our review, we conclude the warrantless search of the container incident to the motorist’s arrest violated his rights under article I, section 8 of the Iowa Constitution.
I. Background Facts and Proceedings.
On December 18, 2012, while on second shift patrol, a Davenport police officer observed a van moving on the roadway with expired Iowa license plates. The officer initiated a traffic stop. As he approached the van, the officer noticed a very strong odor of burnt marijuana emanating from the vehicle. The driver of the van identified himself as Jesse Gaskins, and a passenger in the front seat of the vehicle could not produce identification.
The officer asked Gaskins about the odor of burnt marijuana. Gaskins denied there was any marijuana in the vehicle. Suspecting Gaskins’s answer was untrue, the officer replied that a drug detection dog was on duty that night and that if it were brought to the scene it would detect that the vehicle did contain marijuana. Upon hearing about the prospect of summoning a drug dog, Gaskins said, “Okay, I’ll be honest with you, I got a blunt.” He retrieved a partially-smoked marijuana blunt from the van’s ashtray and gave it to the officer. Because there were two van occupants, the officer requested a second police unit be dispatched to the scene. When a second officer arrived, the officers directed Gaskins and his passenger to exit the van. The officer who initially made the stop immediately arrested Gaskins and secured him inside a police car with his passenger.
Based on his interactions with Gaskins— particularly the fact that Gaskins had initially lied about whether there was marijuana in the vehicle — the arresting officer believed the vehicle contained more marijuana than the blunt Gaskins had retrieved. He therefore directed the second officer to conduct a search of the van to look for additional drugs, paraphernalia, drug packaging materials, weapons, or “[ajnything that was illegal.”
The second officer began conducting the search of the van and discovered a small black portable safe between the driver’s seat and the rear passenger seats. The safe was locked. The officer found a key to the safe’s lock on the keyring in the van’s ignition and used it to open the safe. He did not think about getting a warrant before opening the safe, and later testified he considered it the same as if he had found a zipped duffel bag or any other closed container while searching the van.[1] *4 Inside the safe, he found a loaded handgun with a defaced serial number, several baggies of raw marijuana, several pipes, and some large plastic freezer bags that smelled of marijuana. The vehicle was inventoried, towed, and impounded.
On April 3, 2013, the Státe charged Gas-kins by trial information with three counts: possessing marijuana with intent to deliver, knowingly transporting a revolver in a vehicle, and failing to affix a drug tax stamp.[2] See Iowa Code § 124.401(l)(d); id. § 453B.12; id. § 724.4(1) (2011). Gas-kins .filed a motion to. suppress the contents of the safe, asserting “[tjhere existed no reason to proceed with the search ... without a warrant.” More specifically, he contended the search was not justified by any threat to the officers’ safety or danger that evidence would be destroyed because both occupants of the van had been placed in custody and secured in a squad car away from the van. Gaskins requested the court suppress all evidence removed from the safe because, under both the United States Constitution and the Iowa Constitution, “the [warrantless] search ... violated his right to privacy in a locked safe.”
The State resisted the motion, asserting the warrantless search was a permissible search incident to arrest because it was reasonable to believe the van’s passenger compartment contained evidence of the offense — marijuana possession — for which Gaskins was arrested. See Arizona v. Gant, 556 U.S. 332, 351, 129 S.Ct. 1710, 1723-24, 173 L.Ed.2d 485, 501 (2009) (“Police may search a vehicle incident to a recent occupant’s arrest only if the arres-tee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.”). The State did not assert that any other theory or exception to the warrant requirement justified the warrantless search the officers performed.
At the suppression hearing, the State contended the locked safe was no different from a duffel bag, a backpack, or any other kind of container encountered during the search of a vehicle. Further, the State asserted the fact the key was on Gaskins’s keyring indicated he had access to the safe. Gaskins responded that the locked safe was quite different from duffel bags or backpacks because it was locked, not merely closed, clearly manifesting his expectation of privacy in its contents. The district court denied Gaskins’s motion, concluding the search was a valid search incident to arrest. The district court did not decide whether any other exceptions to the warrant requirement supported the search because the State expressly argued only that the search was valid because it was incident to arrest.[3]
*5 Gaskins was convicted on all three counts following a bench trial on the minutes of testimony. Gaskins appealed, and we retained the appeal.
II.The Parties’ Positions.
Gaskins asserts the warrantless search of his locked safe violated his constitutional rights under the Fourth Amendment to the United States Constitution and under article I, section 8 of the Iowa Constitution. In particular, Gaskins contends the search was not justified by officer safety concerns or by a danger that the safe or its contents could be destroyed under the circumstances presented here because the van’s occupants had been removed from the vehicle and secured in a squad car.
Alternatively, Gaskins contends trial counsel was ineffective. Specifically, he asserts trial counsel breached an essential duty by not discovering criticism and debate about the soundness of the Supreme Court’s holdings in Gant and New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which delineate the circumstances under which — consistent with the Fourth Amendment — officers may conduct a warrantless search of an automobile and its contents incident to the arrest of an occupant. Gaskins asserts that if trial counsel had uncovered the substantial debate about those cases, he could have crafted a much stronger motion to suppress.
The State asserts that existing federal and state court decisions provide sufficient grounds to affirm the district court’s conclusion that the warrantless search in this case was a valid search incident to arrest.
III. Scope of Review.
“Because this case concerns the constitutional right to be free from unreasonable searches and seizures, our review of the district court’s suppression ruling is de novo.” State v. Watts, 801 N.W.2d 845, 850 (Iowa 2011). “We independently evaluate the totality of the circumstances found in the record, including the evidence introduced at both the suppression hearing and at trial.” State v. Vance, 790 N.W.2d 775, 780 (Iowa 2010).
We ordinarily consider ineffective-assistance claims in postconviction-re-lief proceedings. Id. at 785. We only resolve them on direct appeal if the record is adequate to address the claim. Id. If the record is adequate, we review ineffective-assistance claims de novo. State v. Halverson, 857 N.W.2d 632, 634 (Iowa 2015). When evaluating ineffective-assistance claims, we apply a two-pronged test: we ask whether trial counsel breached an essential duty and whether prejudice resulted from any such breach. Vance, 790 N.W.2d at 785; see Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); Halverson, 857 N.W.2d at 635.
IV. Analysis.
We conclude the search in this case was not a valid search incident to arrest. Accordingly, we do not reach Gaskins’s alternative claim that he received ineffective assistance of counsel.
*6 A. Error Preservation. Gas-kins’s motion to suppress raised both the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. At the suppression hearing, Gaskins’s counsel spoke generally about exceptions to the warrant requirement, without specifying whether he was referring to the United States Constitution or the Iowa Constitution. The district court’s ruling only discusses caselaw— from both this court and the United States Supreme Court — and does not cite either constitution.
The State asserts Gaskins’s mere citation to article I, section 8 in the motion did not preserve error based on that provision of the Iowa Constitution because the district court did not rule on it. See Meier v. Senecaut, 641 N.W.2d 532, 537 (Iowa 2002) (“It is a fundamental doctrine of appellate review that issues must ordinarily be raised and decided by the district court before we will decide them on appeal.” (Emphasis added.)). However, we have said:
When there are parallel constitutional provisions in the federal and state constitutions and a party does not indicate the specific constitutional basis, we regard both federal and state constitutional claims as preserved.... Even in these cases in which no substantive distinction had been made between state and federal constitutional provisions, we reserve the right to apply the principles differently under the state constitution compared to its federal counterpart.
King v. State, 797 N.W.2d 565, 571 (Iowa 2011) (citations omitted). We conclude Gaskins preserved his arguments under the Iowa Constitution. See Lamasters v. State, 821 N.W.2d 856, 864 (Iowa 2012) (“If the court’s ruling indicates that the court considered the issue and necessarily ruled on it, even if the court’s reasoning is ‘incomplete or sparse,’ the issue has been preserved.” (quoting Meier, 641 N.W.2d at 540)); cf. Vance, 790 N.W.2d at 780 (confining analysis to the Fourth Amendment because the defendant never raised the Iowa Constitution, even perfunctorily).
B. Constitutional Provisions and Interpretive Authority. Article I, section 8 of the Iowa Constitution provides:
The right of the people to be sécure in their persons, houses, papers and effects, against unreasonable seizures and searches shall not be violated; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons and things to be seized.
Iowa Const. art. I, § 8. This provision “is, of course, nearly identical to the Fourth Amendment to the United States Constitution .... [U]nlike accepted versions of the Fourth Amendment, article I, section 8 utilizes a semicolon between the reasonableness clause and the warrant clause.” State v. Short, 851 N.W.2d 474, 500-01 (Iowa.2014). Members of this court have disagreed about the semicolon’s significance. On one hand, some have suggested “[t]he semicolon suggests the framers believed that there was a relationship between the reasonableness clause and the warrant clause.” Id. at 483. Others believe it may simply be an “inconsequential punctuation difference.” Id. at 522 (Mansfield, J., dissenting).
We do not revisit that debate here. Even “in ... cases in which no substantive distinction [appears] between state and federal constitutional provisions, we reserve the right to apply the principles differently under the state constitution compared to its federal counterpart.” King, 797 N.W.2d at 571 (emphasis added); accord Short, 851 N.W.2d at 491 (majority opinion); State v. Kooima, 833 N.W.2d *7 202, 206 (Iowa 2013); see also State v. Roth, 305 N.W.2d 501, 510-11 (Iowa 1981) (McCormick, J., dissenting) (“Iowa has a proud tradition of concern for individual rights. We should not be reluctant to show greater sensitivity to the rights of Iowans under our constitution than the Supreme Court accords to their rights under the Federal Constitution.”); State v. Eckel, 185 N.J. 523, 888 A.2d 1266, 1275 (2006) (“Although [Article I, Paragraph 7 of the New Jersey Constitution] is almost identical to the text of the Fourth Amendment to the Federal Constitution, we have not hesitated ... to afford our citizens greater protection against unreasonable searches and seizures under Article I, Paragraph 7 than would be the case under its federal counterpart.”).
Of course, “our independent authority to construe the Iowa Constitution does not mean that we generally refuse to follow the United States Supreme Court decisions.” Short, 851 N.W.2d at 490. Rather, it merely assures that we “exercise ... our best, independent judgment of the proper parameters of state constitutional commands,” as we are constitutionally required to do. Id.; see also State v. James, 393 N.W.2d 465, 468 (Iowa 1986) (Lavorato, J., dissenting) (“We push aside our constitutional responsibilities when we merely look to the Supreme Court for answers in examining the state constitution.”).[4] As the New Jersey Supreme Court has explained:
[Although th[e Supreme] Court may be a polestar that guides us as we navigate the New Jersey Constitution, we bear ultimate responsibility for the safe passage of our ship. Our eyes must not be so fixed on that star that we risk the welfare of our passengers on the shoals of constitutional doctrine. In interpreting the New Jersey Constitution, we must look in.front of us as well as above us.
State v. Hempele, 120 N.J. 182, 576 A.2d 793, 800 (1990); accord State v. Hernandez, 410 So.2d 1381, 1385 (La.1982) (“We ... give careful consideration to the United States Supreme Court interpretations of relevant provisions of the federal constitution, but we cannot and should not allow those decisions to replace our independent judgment in construing the constitution adopted by the people of Louisiana.”); State v. Rowell, 144 N.M. 371, 188 P.3d 95, 99-100 (2008) (‘We are careful to consider the reasoning underlying federal constitutional interpretations when construing our own New Mexico Constitution, but we have declined to adopt federal constitutional analysis where we found it unpersuasive or flawed.”); see also Parker v. Commonwealth, 440 S.W.3d 381, 388 (Ky.2014) (stressing that, although the state rule and federal rule were coterminous, “when interpreting our own Kentucky Constitution, th[e] Court is not tethered to the decisions of the U.S. Supreme Court or the reasoning upon which those decisions are founded”).
C. The Search in This Case. Police searched Gaskins’s vehicle and opened the safe without a warrant.- “A warrantless search is presumed unreasonable” unless an exception applies. State v. Moriarty, 566 N.W.2d 866, 868 (Iowa 1997); accord State v. Allensworth, 748 N.W.2d 789, 792 (Iowa 2008); State v. Tolsdorf, 574 N.W.2d 290, 292 (Iowa 1998). The only exception to the warrant requirement litigated in the district court — and *8 thus the only one at issue in this appeal-is search incident to arrest (SITA). See Vance, 790 N.W.2d at 786-87. “The [SITA] exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.” Gant, 556 U.S. at 338, 129 S.Ct. at 1716, 173 L.Ed.2d at 493. Importantly, however, “[t]he [SITA] exception to the warrant requirement must be narrowly construed and limited to accommodating only those interests it was created to serve.” State v. McGrane, 733 N.W.2d 671, 677 (Iowa 2007); accord Vance, 790 N.W.2d at 786-87; State v. Sterndale, 139 N.H. 445, 656 A.2d 409, 410 (1995) (noting the proper scope of a SITA “is limited by the exception’s very specific justifications”); State v. Valdez, 167 Wash.2d 761, 224 P.3d 751, 758-59 (2009) (“The [SITA] exception ... arises from the necessity to provide for officer safety and the preservation of evidence, of the crime of arrest, and the application and scope of that exception must be so grounded and so limited.”).
The seminal decision exploring the SITA exception to the warrant requirement is Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 693-94 (1969). Chimel did not involve the search of a vehicle; rather, police arrested the defendant in his home and “then looked through the entire three-bedroom house, including the attic, the garage, and a small workshop.” Id. at 754, 89 S.Ct. at 2035, 23 L.Ed.2d at 688. The Supreme Court explained the search’s wide sweep rendered it constitutionally invalid:
There is ample justification ... for a search of the arrestee’s person and the area “within his immediate control”'— construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence.
There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs — or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant.
Id. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. In short, the Court confirmed that allowing officers to perform a SITA of a limited area “serve[s] the dual purposes of protecting arresting officers and safeguarding any evidence the arrestee may seek to conceal or destroy.” Vance, 790 N.W.2d at 786; see Chimel, 395 U.S. at 768, 89 S.Ct. at 2043, 23 L.Ed.2d at 697.
In Belton, the Supreme Court confronted the question of the extent to which the Chimel principles should apply in adjudicating a Fourth Amendment challenge to the search of an automobile conducted incident to the arrest of an occupant. See Belton, 453 U.S. at 459, 101 S.Ct. at 2863, 69 L.Ed.2d at 774 (stating the question in that case was “the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants”). An officer pulled a car over for speeding and Belton was a passenger in the car. Id. at 455, 101 S.Ct. at 2861, 69 L.Ed.2d at 772. When the officer approached the car, he “smelled burnt marihuana and [saw] on the floor of the car an envelope marked ‘Supergold’ that he associated with marihuana.” Id. at 455-56, 101 S.Ct. at 2862, 69 L.Ed.2d at 772. He arrested the car’s occupants for possession of marijuana and “then searched the passenger compartment of the car. On the back seat he found a black leather jacket belonging to Belton,” and upon opening a zipped jacket pocket he discovered cocaine. Id. at 456, 101 S.Ct. at 2862, 69 L.Ed.2d at 772. Belton moved to suppress the cocaine on the ground that the warrantless *9 search violated his rights under the Fourth Amendment. Id.
The Court held that “when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.” Id. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775. The Court based its conclusion on the notion that the entire passenger compartment is “generally, even if not inevitably, within ‘the area into which an arrestee might reach.’ ” Id. (quoting Chimel, 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694). But see id. at 466, 101 S.Ct. at 2867, 69 L.Ed.2d at 779 (Brennan, J., dissenting) (characterizing this assumption as “fiction”). Further, the Court concluded that incident to a lawful arrest “the police may also examine the contents of any containers found within the passenger compartment.” Id. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775 (majority opinion).
We adopted Belton in 1981. State v. Sanders, 312 N.W.2d 534, 539 (Iowa 1981) (“[W]e believe Belton strikes a reasonably fair balance between the rights of the individual and those of society. We adopt it now as our rule.”). However, Belton soon became the subject of significant criticism. See Vance, 790 N.W.2d at 787-88 (collecting commentary along with caselaw from multiple states rejecting Belton); Eckel, 888 A.2d at 1272-73 (“[T]he drumbeat of scholarly opposition to Belton has remained constant.”); see also, e.g., Wayne R. LaFave, The Fourth Amendment in an Imperfect World: On Drawing “Bright Lines ” and “Good Faith ”, 43 U. Pitt. L. Rev. 307, 332 (1982) (“[Tjhere is good reason to be critical of the Court’s work in Belton); Eugene L. Shapiro, New York v. Belton and State Constitutional Doctrine, 105 W. Va. L. Rev. 131, 137 (2002) (“Criticism of Belton has been vigorous and sustained.”). So, “[ajlthough Sanders held Iowa’s constitutional doctrine was the same as Belton, Sanders was decided before the criticism of Belton began.” Vance, 790 N.W.2d at 789.
Some members of the Supreme Court became wary of Belton’s breadth. In 2004, Justice Sandra Day O’Connor expressed concern that, after Belton, “lower court decisions seem[ed] ... to treat the ability to search a vehicle incident to the arrest of a recent occupant as a police entitlement rather than as an exception [to the warrant requirement].” Thornton v. United States, 541 U.S. 615, 624, 124 S.Ct. 2127, 2133, 158 L.Ed.2d 905, 915 (2004) (O’Connor, J., concurring in part). Justice Anto-nin Scalia echoed that concern. Id. at 627, 124 S.Ct. at 2134, 158 L.Ed.2d at 917 (Scalia, J., concurring in the judgment) (“[Conducting a [SITA] is not the Government’s right; it is an exception — justified by necessity — to a rule that would otherwise render the search unlawful.”). Justice Scalia also noted the justification for a warrantless SITA — “to find weapons the arrestee might use or evidence he might conceal or destroy” — is much weaker when a defendant is “handcuffed and secured in the back of the officer’s squad car.” Id. at 625, 124 S.Ct. at 2133, 158 L.Ed.2d at 915-16.
Critical commentary on Belton culminated at the Supreme Court in 2009. Gant, 556 U.S. at 350-51, 129 S.Ct. at 1723-24, 173 L.Ed.2d at 501. In Gant, officers arrested the defendant for driving with a suspended license, and while he was handcuffed in a patrol car, the officers “searched his car and discovered cocaine in the pocket of a jacket on the backseat.” Id. at 335, 129 S.Ct. at 1714, 173 L.Ed.2d at 491. The Gant Court acknowledged that its decision in Belton had produced untoward consequences, noting:
*10 The experience of the 28 years since we decided Belton has shown that the generalization underpinning the broad reading of that decision is unfounded. We now know that articles inside the passenger compartment are rarely within the area into which an arrestee might reach, and blind adherence to Belton’s faulty assumption would authorize myriad unconstitutional searches.
Id. at 350-51, 129 S.Ct. at 1723, 173 L.Ed.2d at 501 (citations omitted) (internal quotation marks omitted). Further, the Court noted the testimony of the officer who conducted the warrantless search in Gant manifested the very concern several justices had raised in Thornton: that police had come to view vehicle searches as an entitlement, not an exception. Id. at 336-37, 129 S.Ct. at 1715, 173 L.Ed.2d at 492 (“When asked ... why the search was conducted, [the officer] responded: 'Because the law says we can do it.’ ”).
Gant limited, but did not completely disavow, Belton. See id. at 345-46, 129 S.Ct. at 1720-21, 173 L.Ed.2d at 497-98 (rejecting a reading of Belton, not Belton itself). In particular, the Court limited the circumstances in which a warrantless search of a vehicle incident to arrest is permitted, because holding otherwise would fail to address “the concern about giving police officers unbridled discretion to rummage at will among a person’s private effects.” Id. at 345, 129 S.Ct. at 1720, 173 L.Ed.2d at 497. Thus, the holding in Gant authorizes officers to search a suspect’s vehicle incident to the suspect’s arrest “only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.” Id. at 351, 129 S.Ct. at 1723, 173 L.Ed.2d at 501 (emphasis added). In effect, Gant added a third justification under the Fourth Amendment for searching an automobile incident to the arrest of a recent occupant: a “more general sort of evidence-gathering” pertaining to the crime of arrest. Thornton, 541 U.S. at 629, 124 S.Ct. at 2135, 158 L.Ed.2d at 918; see Gant, 556 U.S. at 343, 129 S.Ct. at 1719, 173 L.Ed.2d at 496 (noting the evidence-gathering rationale “does not follow from Chimel ”).
Although the Supreme Court heard numerous calls to revisit Belton, it did not do so until the Gant decision in 2009. See Vance, 790 N.W.2d at 787-88 (tracing the history of criticism); see also Gant, 556 U.S. at 350-51, 129 S.Ct. at 1723-24, 173 L.Ed.2d at 501. Similarly, since the Supreme Court decided Gant in 2009, we have not had occasion until today to decide whether the protection against warrantless searches and seizures incident to arrest offered by article I, section 8 of the Iowa Constitution conforms to the rule announced in Gant. Indeed, our decisions have cited Gant only twice, and in those cases, it was tangential to the resolution of the issue before us. Vance, 790 N.W.2d at 789-90 (acknowledging Gant limited Bel-ton and mentioning Gant in the context of a defendant’s claim that his counsel was ineffective for failing to research or discover criticism of Belton, but ultimately declining to rule on the ineffective-assistance claim); see also State v. Baldon, 829 N.W.2d 785, 819 (Iowa 2013) (Appel, J., specially concurring) (citing Gant as an example of the United States Supreme Court recognizing and adopting principles from state constitutional jurisprudence). And just as the Supreme Court revisited the rule previously announced in Belton, we are free to revisit our prior decisions and determine whether the Iowa Constitution demands a different standard of protection against warrantless searches incident to arrest. This case presents that opportunity.
*11 Applying the rule in Belton, we concluded the dual purposes of promoting officer safety and preventing evidence destruction justified a warrantless search even when it occurred “after the arrestee ha[d] been handcuffed and restrained outside the vehicle.” State v. Edgington, 487 N.W.2d 675, 677 (Iowa 1992); see Sanders, 312 N.W.2d at 537, 539. Courts in some other states reached the same conclusion in lockstep with Belton. See, e.g., Stout v. State, 320 Ark. 552, 898 S.W.2d 457, 459-60 (1995) (adopting Belton under the Arkansas Constitution and upholding a warrant-less search of an automobile incident to the arrest conducted after the defendant was handcuffed and standing on the side of the highway); State v. Delossantos, 211 Conn. 258, 559 A.2d 164, 168 (1989) (“We hold that when police make a lawful custodial arrest of an occupant of an automobile, and the arrestee is detained at the scene, police may contemporaneously search without a warrant the interior passenger compartment of the automobile.”); State v. Charpentier, 131 Idaho 649, 962 P.2d 1033, 1034-35, 1037 (1998) (adopting Belton under the Idaho Constitution and applying it in upholding a warrantless search of an automobile conducted after the defendant was handcuffed and placed in the patrol car); State v. Rice, 327 N.W.2d 128, 130-31 (S.D.1982) (applying Belton and upholding a search even though the defendant “was not in a position to ... reach a weapon or remove evidence at the time of the search”). But all these state court decisions — including our own — relied on Belton’s “faulty assumption” that the entire passenger compartment of a vehicle is always within an occupant’s reach. Gant, 556 U.S. at 350-51, 129 S.Ct. at 1723, 173 L.Ed.2d at 501; see Belton, 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775. And in Gant, the Court specifically repudiated that assumption, calling it an unfounded generalization that might “authorize myriad unconstitutional searches.” Gant, 556 U.S. at 350-51, 129 S.Ct. at 1723, 173 L.Ed.2d at 501.
In contrast to the group of states that adopted and followed Belton in interpreting their state constitutions, several others have departed from Belton, focusing on the specific and narrow Chimel considerations underpinning the SITA exception to the warrant requirement. For example, in Eckel, the New Jersey Supreme Court stated:
Because the [SITA] exception to the warrant requirement was lim[it]ed for two specific purposes — the protection of the police and the preservation of evidence — and because neither purpose can be advanced by searching the vehicle of a person who effectively is incapacitated, we hold that such a search is incompatible with ... the New Jersey Constitution. To the extent [Belton ] has concluded otherwise in [interpreting] the Federal Constitution, we respectfully part company with the United States Supreme Court.
Eckel, 888 A.2d at 1266. The New Jersey court rejected Belton because Belton wrote “out of the [SITA] exception the two Chimel justifications ... [and] reached a result that is detached from established Fourth Amendment jurisprudence.” Id. at 1277. Accordingly, the court held that “[o]nce the occupant of a vehicle has been arrested, removed and secured elsewhere, the considerations informing the search incident to arrest exception are absent and the exception is inapplicable.” Id.
Similarly, the Washington Supreme Court has held that a warrantless search of a locked container found in an automobile incident to the arrest of an occupant is only permissible under that state’s constitution to “preserve officer safety or prevent destruction or concealment of evidence of the crime of arrest.” Valdez, 224 *12 P.3d at 759. In other words, warrantless searches of locked containers incident to the arrest of an occupant of a vehicle are permitted under the Washington Constitution only where Chimel would allow them. Compare id., with Chimel, 395 U.S. at 768, 89 S.Ct. at 2043, 23 L.Ed.2d at 697. If “officers have the opportunity to prevent the individual’s access to the contents of [a] container so that officer safety or the preservation of evidence of the crime of arrest is not at risk, there is no justification under the [SITA] exception to permit a warrantless search of [a] locked container.” Valdez, 224 P.3d at 759. As the defendant in Valdez had no access to his vehicle at the time of the search of his locked container because he was handcuffed and secured in a patrol car, the “evidence gathered during that search [wa]s therefore inadmissible.” Id. at 753, 760.
The New Hampshire Supreme Court has also departed from Belton in interpreting that state’s constitution. See Sterndale, 656 A.2d at 409-10. After an officer stopped Sterndale for speeding, the officer detected the smell of burnt marijuana emanating from the vehicle. Sterndale “admitted that she had just smoked a ‘joint,’ or marijuana cigarette.” Id. at 410. The officer handcuffed the defendant, placed her in his cruiser, returned to her car, and opened a brown paper bag, in which he found additional marijuana. Id. The court held the search was not a valid SITA under the New Hampshire Constitution:
In the instant case, the defendant was secured, in handcuffs, in the rear of a police cruiser, with two Nashua Police officers on the scene.... [T]he legitimate law-enforcement concerns underlying the [SITA] exception plainly were not present in this case. Since the search was made only after the defendant was securely in custody and unable to gain access to the vehicle, it was not justifiable as a search incident to arrest.

Id.

Several other courts have focused on the Chimel considerations in declining to follow Belton when interpreting their states’ constitutions. See, e.g., Hernandez, 410 So.2d at 1385 (“[T]he Belton rule can have no application after an arrestee has been handcuffed and removed from the scene, foreclosing even the slightest possibility that he could reach for an article within the vehicle.”); Rowell, 188 P.3d at 101 (“There simply was no reasonable basis for concluding that this handcuffed defendant locked inside a patrol car was in any position to escape and get to the contents of his own car to gain access to any weapons or evidence.”); State v. Pittman, 139 N.M. 29, 127 P.3d 1116, 1121 (Ct.App.2005) (“[W]e hold that even after a valid arrest, one of Chimel’s two rationales must be present before an officer may search a vehicle without a warrant.”), cert. quashed, 141 N.M. 165, 152 P.3d 152 (2007); Commonwealth v. White, 543 Pa. 45, 669 A.2d 896, 902 & n. 6 (1995); State v. Bauder, 181 Vt. 392, 924 A.2d 38, 47 (2007) (rejecting Belton “in favor of the traditional rule” because “no persuasive evidence or argument [wa]s offered to demonstrate how defendant — handcuffed in the back seat of the police cruiser — or his passenger who had left the scene, presented any form of threat”).
We now agree with the approach taken by the courts that have rejected the Belton rule that authorized warrantless searches of containers without regard to the Chimel considerations of officer safety and protecting evidence. “When lines need to be drawn in creating rules, they should be drawn thoughtfully along the logical contours of the rationales giving rise to the rules, and not as artificial lines *13 drawn elsewhere that are unrelated to those rationales.” Rowell, 188 P.3d at 101; see also Valdez, 224 P.3d at 758 (reminding readers of “the danger of wandering from the narrow principled justifications of the [SITA] exception, even if such wandering is done an inch at a time”).
Ostensibly, Gant is a limitation on Belton. See Vance, 790 N.W.2d at 788 (“[Gant ] rejected the broad interpretation of Belton and tethered Belton’s bright-line rule to the dual purposes underlying the search-incident-to-arrest exception as recognized in Chimel.”). But Gant also recognized an additional purpose authorizing officers to invoke the SITA exception and conduct a warrantless search of the auto and containers within it under the Fourth Amendment if “it is reasonable to believe the vehicle contains evidence of the offense of arrest.” Gant, 556 U.S. at 351, 129 S.Ct. at 1723, 173 L.Ed.2d at 501. This additional purpose stands wholly separate from the justifications originally underlying the SITA exception. See id. at 343, 129 S.Ct. at 1719, 173 L.Ed.2d at 496.
We approve Gant’s “reaching distance” rationale as an appropriate limitation on the scope of searches incident to arrest under article I, section 8 of the Iowa Constitution because that limitation is faithful to the underlying justifications for warrantless searches incident to arrest. However, we decline to adopt Gant’s alternative evidence-gathering rationale for warrantless searches incident to arrest under the Iowa Constitution because it would permit the SITA exception to swallow completely the fundamental textual rule in article I, section 8 that searches and seizures should be supported by a warrant. In other words, “use of a [SITA] rationale to sanction a warrantless search that has nothing to do with its underlying justification — preventing the arrestee from gaining access to weapons or evidence — is an anomaly.” Rowell, 188 P.3d at 100; see also State v. Snapp, 174 Wash.2d 177, 275 P.3d 289, 301 (2012) (declining to adopt the evidence-gathering rationale under the state constitution). Although the evidence-gathering rationale announced in Gant limits the propriety of a warrantless search of an automobile and containers found within it incident to arrest to those instances when it is reasonable to believe the vehicle contains evidence of the crime of arrest, construing the exception this broadly “would serve no purpose except to provide a police entitlement.” Gant, 556 U.S. at 347, 129 S.Ct. at 1721, 173 L.Ed.2d at 499. Police entitlements are incompatible with Iowans’ robust privacy rights. See, e.g., Short, 851 N.W.2d at 507 (Cady, C.J., concurring specially) (“[W]e cannot ignore that our history of robust protection of human rights owes in no small part to our authority within America’s federalist system to independently interpret our constitution.”); Baldon, 829 N.W.2d at 803 (holding a consent provision in a parole agreement does not voluntarily waive constitutional search and seizure protection under the Iowa Constitution); State v. Pals, 805 N.W.2d 767, 782-83 (Iowa 2011) (concluding consent to search obtained during a traffic stop was invalid because traffic stops are inherently coercive); State v. Ochoa, 792 N.W.2d 260, 291 (Iowa 2010) (finding invalid a search that “too closely resemble[d] authority pursuant to a general warrant”).
In declining to adopt Gant’s broad evidence-gathering purpose as a rationale for warrantless searches of automobiles and their contents incident to arrest under article I, section 8 of the Iowa Constitution, we note the historical precedent upon which that rationale relies was specifically rejected in Chimel. See Chimel, 395 U.S. at 768, 89 S.Ct. at 2042-43, 23 L.Ed.2d at 696-97; see also Gant, 556 U.S. at 343-44, *14 129 S.Ct. at 1719, 173 L.Ed.2d at 496 (relying on Justice Scalia’s concurrence in Thornton in formulating the evidence-gathering rationale); Thornton, 541 U.S. at 629, 124 S.Ct. at 2135-36, 158 L.Ed.2d at 918 (Scalia, J., concurring in the judgment) (collecting cases). We conclude the SITA exception to the warrant requirement under article I, section 8 of the Iowa Constitution is justified by the State’s interest in preserving evidence from destruction, not merely collecting it expediently. Cf. State v. Tibbles, 169 Wash.2d 364, 236 P.3d 885, 889 (2010) (en banc) (“[W]hatever relative convenience to law enforcement may obtain from forgoing the burden of seeking a warrant ..., we adhere to the view that ‘mere convenience is simply not enough.’ ” (quoting State v. Patterson, 112 Wash.2d 731, 774 P.2d 10, 12 (1989))).
Indeed, the important distinction between the purpose of preserving evidence and the purpose of collecting evidence in SITA analysis was evident even before Chimel as the Supreme Court demonstrated a desire to constrain the scope of the SITA exception under the Fourth Amendment. Preston v. United States, 376 U.S. 364, 367-68, 84 S.Ct. 881, 883-84, 11 L.Ed.2d 777, 780-81 (1964). While recognizing the general parameters of the SITA exception, the Court noted “these justifications are absent where a search is remote in time or place from the arrest.” Id. at 367, 84 S.Ct. at 883, 11 L.Ed.2d at 780. When a vehicle search “was not undertaken until [defendant] ... had been arrested and taken in custody,” there “was no danger that [he] could have used any weapons in the car or could have destroyed any evidence of a crime.” Id. at 368, 84 S.Ct. at 883, 11 L.Ed.2d at 781. The search performed without a warrant was “simply not incident to the arrest.” Id. at 367, 84 S.Ct. at 883, 11 L.Ed.2d at 780-81. We conclude the Court’s rationale in Preston further supports our determination that the Gant evidence-gathering rationale is divorced from the underlying SITA justifications and is repugnant to article I, section 8 of the Iowa Constitution.
Applying these principles to the facts of this case, we conclude the search of Gaskins’s locked safe was not a valid SITA under article I, section 8. Two police officers were on the scene. Although the van had two occupants, both Gaskins and his passenger were secured in a squad car before the search of the vehicle and the safe were undertaken. The officer who performed the search testified there was no way Gaskins could have retrieved anything from the locked safe while in custody in the squad car. See Pittman, 127 P.3d at 1122 (“Handcuffed and secured in the patrol car, Defendant had no realistic opportunity to escape, wrestle the car keys from the officer, rush over to his locked car, unlock the door, and seize the weapon from under the seat.”); see also Rose v. Commonwealth, 322 S.W.3d 76, 80 (Ky.2010) (finding a search of a vehicle incident to the occupant’s arrest unreasonable when the occupant was secured in a police cruiser because “there was no possibility [the occupant] could have gained access to the vehicle to destroy evidence or access a weapon”); Camacho v. State, 119 Nev. 395, 400-01, 75 P.3d 370 (2003) (concluding when a defendant was arrested and placed in handcuffs, it was “extremely unlikely” he could have “reached a weapon in his vehicle or destroyed or concealed evidence in his vehicle”). The officers’ safety was not endangered, and Gaskins could only have reached the vehicle to destroy evidence if he had “the skill of Houdini and the strength of Hercules.” United States v. Frick, 490 F.2d 666, 673 (5th Cir.1973) (Goldberg, J., concurring in part and dissenting in part). We decline to attribute these mythical qualities to Gaskins.
*15 Because we conclude the search was not a valid SITA under article I, section 8 of the Iowa Constitution, the safe’s locked status does not control our decision. See Perez v. People, 231 P.3d 957, 962 (Colo.2010) (“[A] container cannot be accessed if the vehicle containing it cannot be searched_”). We acknowledge that some other courts have concluded officers can open locked containers during a SITA. See, e.g., United States v. Vinton, 594 F.3d 14, 26 (D.C.Cir.2010) (briefcase); United States v. Thomas, 11 F.3d 620, 624-25, 628 (6th Cir.1993) (safe); United States v. McCrady, 774 F.2d 868, 871-72 (8th Cir.1985) (glove compartment); People v. Tripp, 306 Ill.App.3d 941, 240 Ill.Dec. 2, 715 N.E.2d 689, 698 (1999) (footlocker); Pack v. Commonwealth, 6 Va.App. 434, 368 S.E.2d 921, 923 (1988) (luggage). But if we focused here on the fact the safe was locked, we would be considering only a very narrow spatial question while presuming the officers could permissibly search the van under the SITA exception to article I, section 8 once Gaskins and his passenger were secured. This we decline to do.
Although we reject Gant’s evidence-gathering rationale for warrantless searches incident to arrest under the Iowa Constitution, we of course do not reject the SITA exception entirely. Our decision today does not preclude a warrantless SITA under circumstances in which the security of an arresting officer is implicated, see Tolsdorf, 574 N.W.2d at 291, or when the vehicle may reasonably be suspected to contain volatile chemicals, see State v. Ferguson, 131 Wash.App. 694, 128 P.3d 1271, 1275 (2006), or when the arrested person is within reach of contraband and thus able to attempt to destroy or conceal it. We leave for another day any questions related to these or similar scenarios in which the dual purposes of the SITA exception are supported in the record.
We are sensitive to the State’s policy concerns, but we conclude they do not justify the warrantless search incident to arrest in this case. For example, the State contends obtaining a warrant in the field is not an instantaneous proposition, especially when — as in this case — a traffic stop occurs at a late hour, making it less convenient to approach a magistrate and request a warrant immediately. We acknowledge the officers likely would not have obtained a search warrant instantaneously, had they requested one. Yet, any inconvenience resulting from the need to request and obtain a search warrant at the late hour does not defeat the protection offered by article I, section 8 because
constitutional protections do not simply fade away with the setting of the sun. The prohibition against unreasonable searches safeguards people ... at all times. We cannot conclude that the validity of a warrantless search could turn solely on the time of day that search was conducted.
State v. Elison, 302 Mont. 228, 14 P.3d 456, 471 (2000).
Nonetheless, the State continues, a child could have gained access to the drugs and the. gun in Gaskins’s vehicle had it been left unattended on a Davenport street while officers obtained a warrant. Further, the State asserts a warrant requirement in this instance puts a strain on police resources, because one officer would have to stay with the vehicle while another traveled to get the magistrate’s approval. However, these concerns are premised on the notion the vehicle would remain on the street. Because it was impounded, both of these dangers are more imaginary than real.
Lastly, the State contends, the public sees no benefit in exchanging an immedi *16 ate warrantless search for an impoundment and later search authorized by warrant. We conclude this assertion misses the mark. The protections of article I, section 8 against warrantless searches are not meant to benefit the public generally. They are meant to protect individual citizens and their reasonable expectations of privacy. See Ochoa, 792 N.W.2d at 274-75 (“[I]t is clear that the Iowa framers placed considerable value on the sanctity of private property.”); cf. McClurg v. Brenton, 123 Iowa 368, 371, 98 N.W. 881, 882 (1904) (“The right of the citizen to occupy and enjoy his home ... is embodied in every bill of rights defining the limits of government power in our own republic.” (Emphasis added.)). As we explained exactly one hundred years ago:
[T]he Constitution [is not] a public enemy whom judges are charged to disarm whenever possible. It is the protector of the people, placed on guard by them to save the rights of the people against injury.... To hold that attack upon it is for the public good is to commend the soldier for tearing down the rampart which enables him to sleep in safety.
Hunter v. Colfax Consol. Coal Co., 175 Iowa 245, 272, 154 N.W. 1037, 1047 (1915).
In sum, we overrule Sanders because we conclude Belton no longer sets forth the proper scope of the SITA exception under the Iowa Constitution. Instead, the SITA exception to the warrant requirement under article I, section 8 is tethered to its original underlying dual justifications. When we apply those justifications in this case, we conclude the search of Gaskins’s van and safe was not a valid warrantless SITA under the Iowa Constitution because at the time the police officer conducted it there was no danger to the officer or likelihood that Gaskins could access the vehicle to obtain a weapon or destroy evidence. Of course, our holding that the warrantless search of the van was not justified under article I, section 8 as a SITA does not mean the van was immune from search; our holding “is instead that a warrant is generally required before such a search.” Riley v. California, — U.S. -, -, 134 S.Ct. 2473, 2493, 189 L.Ed.2d 430, 451 (2014).
V. Conclusion.
“The word ‘automobile’ is not a talisman in whose presence the [constitutional protection against warrantless searches and seizures] fades away and disappears.” Coolidge v. New Hampshire, 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564, 580 (1971). That sentiment applies with equal force to article I, section 8 of the Iowa Constitution.[5] Because Gaskins could not access anything inside the vehicle or the locked safe when the search occurred, the search of the safe was not a valid SITA. Accordingly, the State was required to obtain a warrant before searching the van and the safe. Because it did not do so, the district court should *17 have granted Gaskins’s motion to suppress. We reverse Gaskins’s conviction and remand for proceedings consistent with this opinion.
REVERSED AND REMANDED.
CADY, C.J., and WIGGINS and APPEL, JJ., join this opinion. CADY, C.J., files a separate concurring opinion in which WIGGINS, J., joins. APPEL, J., files a separate concurring opinion in which CADY, C.J., and WIGGINS, J., join. WATERMAN, J., files a dissenting opinion in which MANSFIELD and ZAGER, JJ., join. ZAGER, J., files a dissenting opinion in which WATERMAN and MANSFIELD, JJ., join.

. The searching officer testified he only opened the safe because he found the key. If he had not found the key, he stated he would have informed the arresting officer and "dis *4 cussed it with him to see what [they] would have to [do].”

. Gaskins’s passenger — a minor — was re- ' leased to his mother and was not charged as a consequence of the incident.

. The officers’ testimony and the county attorney's legal argument presented at the suppression hearing confirm the focus on the search-incident-to-arrest exception to the warrant requirement. The arresting officer testified about the .nature of the van’s passenger compartment, stating the vehicle had no separate trunk compartment. Further, the searching officer testified the safe was possibly within the reach of anyone sitting in the driver’s seat. The scope of the passenger compartment and the question whether an object was within- reaching distance of an arrestee áre key factors in analyzing challenges to warrantless searches made incident to arrest. See Gant, 556 U.S. at 339, 129 S.Ct. at 1716, 173 L.Ed.2d at 493 ("If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent *5 and the rule does not apply.”); State v. Olsen, 315 N.W.2d 1, 5 (Iowa 1982) (concluding the search-incident-to-arrest exception cannot authorize officers to search a vehicle’s trunk because the trunk is neither the passenger compartment nor within reaching distance of any occupant). Additionally, while presenting legal argument after all testimony Had been submitted, the county attorney twice stated, unequivocally, that the search clearly fell into the search-incident-to-arrest exception and did not assert any other exception to the warrant requirement justified the search in this case.

. The State urges' adoption of "neutral interpretive principles” or "divergence criteria” for deciding when this court will rely on independent state grounds for its decisions. We recently addressed and rejected the notion of such criteria in Short, and do so again here. See Short, 851 N.W.2d at 490-91.

. We are mindful that our recent article I, section 8 decisions have received criticism because they diverge from the Supreme Court’s interpretation of the Fourth Amendment. See, e.g., Short, 851 N.W.2d at 515 (Waterman, J., dissenting) ("Revisiting settled precedent whenever four justices of this court find prior cases ‘unpersuasive’ leads to serious and troubling repercussions.”); Baldon, 829 N.W.2d at 837 (Mansfield, J., dissenting) ("I have serious concerns about an approach that treats a United States Supreme Court decision as just another dish on the menu.”). However, the notion that any departure from precedent is problematic is a non sequitur. The Supreme Court has revised its understanding of the SITA exception over time. Compare Preston, 376 U.S. at 367-68, 84 S.Ct. at 883-84, 11 L.Ed.2d at 781, with Gant, 556 U.S. at 350-51, 129 S.Ct. at 1723, 173 L.Ed.2d at 500-01. Today, we merely do the same. We are not forever confined to the analysis our predecessors undertook, because no supreme court is — nor should it be.