# IN THE COURT OF APPEALS OF IOWA

No. 21-1062
Filed February 8, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BRIAN JOSEPH LAVENZ,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Melissa Anderson-Seeber (motion to suppress) and Andrea J. Dryer (trial and sentencing), Judges.

Brian Lavenz appeals his convictions and sentences for possession of a controlled substance (methamphetamine) with intent to deliver and failure to affix a drug tax stamp. **AFFIRMED**

Christopher A. Clausen of Clausen Law Office, Ames, for appellant.

Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., Tabor, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**DOYLE, Senior Judge.**

Brian Lavenz appeals his convictions and sentences for possession of a controlled substance (methamphetamine) with intent to deliver and failure to affix a drug tax stamp. He contends the court erred by denying his motion to suppress evidence discovered during a traffic stop. He also contends the sentencing court abused its discretion because it failed to acknowledge it had discretion to suspend the sentences. We affirm the denial of the motion to suppress evidence, and the sentences imposed.

**I. Background Facts and Proceedings.**

The basis for Lavenz's appeal is rooted in a January 2021 traffic stop. Officer Ben Neuman pulled Lavenz over because no license plate was displayed on his vehicle. The officer confirmed the identity of Lavenz's passenger, who had felony warrants for her arrest, and requested a second officer to assist him before taking her into custody. Officer Neuman then began investigating the reason for the stop and learned the vehicle's title was not properly signed and Lavenz had no proof of insurance.

While Officer Neuman investigated, Police Chief Mike Dean arrived to assist. Based on his knowledge of Lavenz, Chief Dean requested a K9 unit to perform a drug sniff around the vehicle. Deputy Chad Chase arrived with his K9. During the drug sniff, the K9 indicated the presence of narcotics near the backseat area on both sides of the vehicle. On that basis, the officers searched the backseat of Lavenz's vehicle. They found a black coat that Lavenz admitted belonged to him. Inside a pocket, they found a plastic bag containing methamphetamine, a can of Narcan nasal spray, and a key. During the search, Deputy Chase noticed

that the backseat, which folded down to allow trunk access, "wasn't latched and attached." When the officers opened the compartment, they found a bank bag in the trunk area.[1] The bag locked with a key. "Out of curiosity," Deputy Chase put the key found in Lavenz's coat in the lock "to see if that was the key to it, and it popped right open." Inside were coins, syringes, and plastic bags containing thirty-five grams of methamphetamine.

The State charged Lavenz with possession of methamphetamine with intent to deliver and a drug-tax-stamp violation. Lavenz moved to suppress the evidence discovered during the search of his vehicle, alleging it violated his constitutional right to be free from unreasonable searches and seizures. After the court denied the motion, the matter proceeded to a bench trial on the minutes of evidence. The district court found Lavenz guilty of both charges and sentenced him to terms of incarceration of twenty-five years on the possession charge and five years on the tax-stamp violation.

## II. Motion to Suppress.

Lavenz first challenges the denial of his motion to suppress the methamphetamine discovered during the search of his vehicle. He alleges law enforcement violated his constitutional right to be free from unreasonable seizure by prolonging the stop to allow for the K9 unit's search. He also alleges the

---

[1] At the suppression hearing, Deputy Chase was equivocal when asked about the precise location of the bank bag:

> Q. And the bank bag, to be clear, was in the trunk? A. Yes. It was right behind the driver's side rear passenger—that seat. It just kind of was kicked open, it wasn't latched. So, yeah, it was right there. If that would have been latched, it would have been in the trunk, yes.

warrantless search of a locked bag found in his vehicle's trunk violated his right to be free of unreasonable searches. We review the denial of a motion to suppress based on alleged constitutional violations de novo. *See State v. Carson*, 968 N.W.2d 922, 926 (Iowa Ct. App. 2021).

**A. Was Lavenz unreasonably seized during a prolonged traffic stop?**

We first address Lavenz's claim that the traffic stop was prolonged in violation of his constitutional rights. After initiating a lawful traffic stop, an officer may reasonably inquire into matters addressing the traffic infraction or related safety concerns. *See State v. Warren*, 955 N.W.2d 848, 865 (Iowa 2021). Reasonable inquiries include checking the driver's license, registration, and insurance coverage. *See id.* The time it takes to do so does not illegally prolong a traffic stop. *See id.*

Citing *In re Property Seized from Pardee*, 872 N.W.2d 384, 391 (Iowa 2015), Lavenz argues the ten to twelve minutes that passed between the start of the traffic stop and a K9 unit's arrival to conduct the open-air sniff amounts to an unreasonable detention.[2] In *Pardee*, a trooper stopped a vehicle to issue citations

---

[2] No video recordings are included in the record provided to us, but the parties agreed about how much time passed between events. Because time stamps vary between sources, we list the time by passage of minutes from the beginning of the traffic stop:

    :00 Officer Neuman stops Lavenz's vehicle
    :03 Officer Neuman takes the passenger into custody
    :05 Officer Neuman asks dispatch to run Lavenz's name
    :05 Chief Dean requests a K9 unit
    :08 Officer Neuman asks dispatch to run the VIN number
    :11 K9 unit arrives
    :13 Dispatch returns vehicle information to Officer Neuman
    :16 Lavenz in custody

Although it is unclear when the open-air sniff occurred, Lavenz was taken into custody after the bank bag was opened. Officer Neuman testified that he had not

based on a broken taillight and following closely behind a semi. 872 N.W.2d at 386. The trooper asked the driver to accompany him to the patrol car, where he questioned the driver at length on issues unrelated to the citations. *Id.* at 386-87. It was during this prolonged questioning that the trooper's justifiable suspicion increased to a reasonable suspicion of criminal activity. *Id.* at 393. A total of twenty-five minutes passed between the start of the stop until the K9 unit arrived, but the trooper admitted "that the entire stop would have taken only about ten to twelve minutes if he had been focused on issuing the [traffic] warnings."[3] *Id.* Because the trooper developed reasonable suspicion of criminal activity to justify the search after the time the traffic stop should have concluded, the court held the evidence discovered during the search was inadmissible. *Id.*

Although the court found ten minutes was more than required for the simple traffic stop in *Pardee*, the facts before us differ. *See Carson*, 968 N.W.2d at 926–27 (noting that we review the denial of a motion to suppress based on a constitutional violation by viewing the entire record and evaluating each case "in light of its unique circumstances"). The first three minutes of the stop involved the officer identifying the passenger and taking her into custody. It was not until after that point that Officer Neuman began investigating the vehicle's registration.[4]

---

finished issuing Lavenz a citation for the insurance violation before he was taken into custody. He denied "delaying or stalling" his investigation.

[3] The court further noted that "based on our review of the videos, we think the ten-to-twelve-minute estimate overstates the amount of time a simple traffic stop would have required." *Pardee*, 872 N.W.2d at 396.

[4] Lavenz told the officer he had purchased the vehicle recently and provided the vehicle's title and a bill of sale. The title was signed by the seller but not the purchaser. Lavenz told the officer that "the car still needed to be registered to the [former owner]."

When Lavenz admitted he did not have insurance coverage, Officer Neuman decided to issue a citation for the insurance violation. He asked dispatch to check Lavenz's license and the VIN, and he was awaiting that information when Deputy Chase arrived.

The main dispute concerns the timing of the drug sniff. Although the record is unclear as to the exact time, one can infer from the evidence that the drug sniff occurred while Officer Neuman was still investigating. The K9 unit arrived two minutes before dispatch provided Officer Neuman with the vehicle information; the K9 could reasonably begin a search and indicate the presence of narcotics in that time. Lavenz was in custody three minutes after dispatch returned the vehicle information, and one can infer that the search of the backseat, the discovery of the methamphetamine, and Lavenz's arrest would take at least three minutes. The inference is supported by other evidence. Officer Neuman's narrative report of the incident states, "During the K9 search I was working on the vehicle and preparing an insurance citation." Officer Neuman's testimony at the suppression hearing confirms that narrative:

> Q. Now, when the dog went and did an open-air sniff around the car, you know that the dog alerted on the back passenger door; isn't that right? A. I was working on the ticket at that time. I wasn't involved with the open-air sniff of the—
> Q. Well, your car was parked directly behind Mr. Lavenz's car? A. Correct.
> Q. So you could see where the dog was doing the sniff? A. Again, I was working on the citation, running the VIN number, and the driver's license. I wasn't involved with the open-air sniff at all.
> Q. But it is your knowledge that the dog did alert on the vehicle? A. Yes, that's what I was told.

Officer Neuman also testified that he was not involved in the search of the backseat, only becoming involved when the trunk was searched—an event that

occurred only after Lavenz was in custody. Because the record shows Officer Neuman was still investigating and citing Lavenz in connection with the traffic stop at the time the drug sniff provided probable cause for the vehicle search, there was no unlawful detention. We affirm the denial of the motion to suppress evidence seized during the search of the backseat.

**B. Was the search of the locked bag unreasonable?**

We turn then to the warrantless search of a locked bank bag found in the vehicle's trunk, which Lavenz claims violated his constitutional right to be free from unreasonable searches. In support of his argument, he cites *State v. Gaskins*, 866 N.W.2d 1, 3 (Iowa 2015), which involved a warrantless search of a locked safe in a vehicle following the defendant's arrest. The supreme court in *Gaskins* found the search did not fall under the exception for search incident to arrest because the defendant and his passenger were secure in a squad car before the search, invalidating any concerns about officer safety or destruction of evidence. 866 N.W.2d at 14.

In ruling on the motion to suppress, the district court noted that the State did not rely on the exception for search incident to arrest to justify the warrantless search of the trunk or bank bag. Instead, it relied on the exceptions for probable cause and exigent circumstances. Finding the search fell within the probable cause exception, the district court denied the motion to suppress the evidence seized during the search of the bank bag.

Lavenz does not dispute that the search falls within the exception for probable cause. He instead asks us to extend the holding of *Gaskins* to apply to "all warrantless automobile searches when the occupants of the vehicle no longer

present an exigent circumstances type of issue." He urges the court to expand the reasoning of *Gaskins* "to all warrantless vehicle searches, at least when the occupants are in custody." But "[w]e are not at liberty to overrule controlling supreme court precedent." *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014). Our supreme court has stated, "If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves." *State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957).

### III. Sentence.

Finally, Lavenz contends the district court abused its sentencing discretion when it failed to suspend his sentences. *See State v. Wilbourn*, 974 N.W.2d 58, 65 (Iowa 2022) (stating that we review criminal sentences for correction of errors at law). Because Lavenz's sentence falls within statutory limits, there is a strong presumption in its favor. *See id.* at 65. Lavenz bears the burden of showing an abuse of discretion or defect in the sentencing procedure. *See id.* An abuse of discretion occurs when the sentencing court is unaware it can exercise a sentencing option. *See id.* at 67. In such cases, we typically vacate and remand for resentencing. *See id.*

Lavenz claims the court's failure to acknowledge that it had discretion to suspend his sentence under Iowa Code section 124.409 (2021) shows it was unaware it had that discretion. *See id.* (stating an abuse of discretion occurs when the court fails to exercise discretion that it is unaware it has). But Lavenz fails to show the sentencing court was unaware it could suspend the sentences. The presentence investigation report (PSI) recommended suspending Lavenz's sentences. Lavenz's counsel told the sentencing court that Lavenz supported that

recommendation, citing section 124.409 as a way to suspend the sentences. Instead, the court imposed concurrent terms of incarceration as recommended by the State. The court explained its reasons for imposing terms of incarceration. First, it noted the nature and circumstances of the crimes, including the amount of methamphetamine involved. It also noted Lavenz's "lengthy" criminal history, which includes prior convictions for possession with intent to deliver controlled substances. And the court noted Lavenz's past sentences for those crimes and his past attempts at treatment. Finally, the court referred to "the other facts and circumstances that are recited in the PSI." The sentencing court adequately stated the reasons for the sentence it imposed. *Id.* It was not required to state its reasons for rejecting a particular sentencing option. *See id.*; *State v. Crooks*, 911 N.W.2d 153, 171 (Iowa 2018) ("[A] sentencing court need only explain its reasons for selecting the sentence imposed and need not explain its reasons for rejecting a particular sentencing option." (citation omitted)).

Because the court properly exercised its sentencing discretion, we affirm the sentences imposed.

**AFFIRMED.**