# IN THE COURT OF APPEALS OF IOWA

No. 16-0640
Filed August 2, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DEBBIE LIN CAMPBELL,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, William A. Price (motion to suppress) and Gregory D. Brandt (bench trial), District Associate Judges.

A defendant appeals her conviction claiming the district court should have granted her motion to suppress evidence. **REVERSED AND REMANDED.**

Alexander D. Smith of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, Presiding Judge.**

Debbie Lin Campbell appeals following her conviction for possession of a controlled substance, second offense, following a bench trial on the stipulated minutes of testimony. *See* Iowa Code § 124.401(5) (2016). She claims the district court should have granted her motion to suppress evidence found during the search of her purse. We conclude the deputies illegally seized Campbell's purse when she was ordered to place her purse back in the car after she had exited, and as a result, the evidence found in her purse should be suppressed. We reverse and remand for a new trial.

**I. Background Facts and Proceedings.**

In the late night hours of January 10, 2016, Campbell was a passenger in a car being driven by Roger Nourie. Polk County Deputy Nihad Hodovic stopped Nourie's car for an expired registration tag. Nourie accompanied Deputy Hodovic back to the deputy's vehicle, but Campbell remained in the passenger's seat of Nourie's car. Deputy Hodovic discovered Nourie's driver's license was revoked[1] and he did not have valid insurance on the car. Based on this information, Deputy Hodovic decided to impound the car and issue citations to Nourie.

Deputy Jason Sadler arrived on scene to assist, and Deputy Hodovic asked him to remove Campbell from the car and place her, with Nourie, in the back of Deputy Hodovic's vehicle because Deputy Hodovic had agreed to give them a ride home. Deputy Sadler asked Campbell to step out of the vehicle, and Campbell complied, carrying her purse in her hand. Deputy Sadler then instructed Campbell to place her purse back in the car; Campbell did as she was

---

[1] Campbell also informed Deputy Hodovic that she did not have a valid driver's license.

directed. Deputy Sadler then had Campbell open her jacket and turn around before placing her in the back seat of Deputy Hodovic's vehicle.

The deputies then conducted an inventory search of Nourie's car, discovering a small amount of marijuana in a pill container, bearing Nourie's name. Nourie admitted the marijuana was his. The deputies then searched Campbell's purse, which was still in the car, locating prescription medication. Campbell admitted she did not have a valid prescription for the pills and could not recall the name of the medication. The deputies determined the pills were alprazolam, and Campbell was arrested and charged with the illegal possession of the medication.

Campbell filed a motion to suppress the evidence discovered in the search of her purse, claiming it violated her federal and state constitutional rights to be free from unreasonable searches and seizures. Specifically, she claimed the deputy illegally directed her to place her purse back in the car when she exited, which then made the purse a container in the car that could be searched after marijuana was found in the car. The State resisted the motion, claiming that the location of the purse at the time the marijuana was discovered did not make a difference as the discovery of the marijuana gave the deputies probable cause to search all containers located in the vehicle at the time the vehicle was stopped. The State claimed the purse could have been searched after marijuana was discovered in the car because it was inside the car when the car was seized by the deputies.[2]

---

[2] We note this argument is not repeated by the State on appeal. However, the automobile exception permits all containers *inside* a vehicle to be searched at the time

At the hearing on the motion to suppress, the court heard the testimony of Deputy Sadler and observed a portion of the dash cam video of the stop from Deputy Hodovic's vehicle. Deputy Sadler testified he instructed Campbell to place her purse back into the car after she exited the car with her purse in hand. Deputy also Sadler testified, "I never let anybody take a purse with them or any items due to it's part of the inventory search. It needs to be inventoried to make sure nothing of value as well as any weapons, officer's safety. We don't know what she has in the purse with her." Deputy Sadler went on to explain:

> [D]ue to close contact, the nature in dealing with the person or even having the patrol car, we don't know what's on the person or in the purse. So therefore, we want to verify there [are] no weapons, nothing to prevent or jeopardize our safety, or to their safety, whether it may be something they may have.

The district court denied Campbell's motion on the record, stating:

> The court finds that on or about January 10, 2016, a vehicle being operated by Mr. Roger Nourie was stopped in the 3900 block of East 29th Street by [Deputy] Hodovic, that [Deputy] Hodovic determined that Mr. Nourie was a revoked driver, that the registration to the vehicle was expired, and Mr. Nourie did not

when probable cause to search arises, not all containers located in the vehicle at the time the vehicle is stopped. *See State v. Eubanks*, 355 N.W.2d 57, 60 (Iowa 1984) ("Once the patrolman lawfully stopped the car and had probable cause to search it for contraband, in this case marijuana, he could lawfully open and examine all containers within the vehicle *from the time probable cause appeared*." (emphasis added)). Often the lawful stop of the vehicle and the probable cause to search will occur contemporaneously, as in *Eubanks*, where the officer smelled marijuana as the officer approached the car. *Id*. at 58. Thus, Eubanks's removal of her purse after the officer asked her to step out of the vehicle did not insulate the purse from the automobile exception search because the purse was in the vehicle at the time the officer smelled the marijuana. *Id*. at 60 ("Once the patrolman lawfully stopped the car *and* had probable cause to search for contraband, all containers within the car when it was stopped were fair game for the car search. Defendant had no right to insulate her purse or any other container from a lawful warrantless search by the simple expedient of physically removing the purse and its contents from the car *while* the search was in progress." (emphasis added)). In this case, both the stop of the car for the registration violation and the officer's instruction to Campbell to place her purse back in the car, *preceded* the time when probable cause to search the car arose due to the discovery of the marijuana in the center console during the inventory search.

produce current proof of insurance. A decision was made to impound the vehicle.

Mr. Nourie was already out of the vehicle. And [Deputy] Sadler, who had come to the place of the stop, was asked to have Ms. Campbell come out of the vehicle that had been operated by Mr. Nourie as the vehicle was going to be impounded.

Ms. Campbell was going to be placed in a sheriff's vehicle[.] [P]rior to being placed in the vehicle[, a]s noted on defendant's Exhibit A [the dash cam video of the traffic stop], Ms. Campbell was not physically patted down but was asked to open her coat, which she did[,] to face the deputy, [and then to] face away from the deputy and he observed Ms. Campbell prior to placing Ms. Campbell in the deputy's vehicle.

As Ms. Campbell was getting out of the vehicle, she was directed to leave her purse in the vehicle that had been operated by Mr. Nourie and as explained by Deputy Sadler, this was for officer safety at the scene until the purse could be determined to not contain anything that would, you know, would be unsafe to the officers.

Thereafter, because the vehicle was being impounded, an impound search commenced. Pursuant to Deputy Sadler's request, the purse of Ms. Campbell was still in the vehicle[,] [d]espite her initial attempt to take the purse with her from the vehicle[.] [T]hat as a part of the impound search, marijuana was found in the vehicle by Deputy Hodovic, that the detectives then began to look in the vehicle for further controlled substances, [and] that because this was a vehicle and deputies had at that point probable cause to believe that the vehicle may contain other controlled substances.

However, the court believes that the issue of exigent circumstances had disappeared at that instant. The reason being that the decision was made to impound. They were still going through the impound search. That vehicle can't go anyplace until the deputies decided it to go anyplace because they would be the ones to impound it. Consequently, at that moment, there are no more exigent circumstances.

. . . .

I believe it is noteworthy that Ms. Campbell was not given the option of either leaving her purse for inspection or allowing [her] to take her purse and leave the area, keeping in mind that Ms. Campbell was not in custody and had not been charged with any offense at that time.

. . . .

The court views that *Wyoming v. Houghton*[, 526 U.S. 295 (1999),] is the controlling case in this area, and it is clear in *Wyoming v. Houghton* that once probable cause justifies the search of a lawfully stopped vehicle, and there is no evidence that this was

not a lawfully stopped vehicle and, in fact, the only evidence is that it was lawfully stopped, that such search of every part of the vehicle and its contents that may conceal the object of the search is appropriate and that this rule applies to all containers within the vehicle without qualifications as to the ownership or without showing individualized probable cause for each container.

It's also clear from *Wyoming v. Houghton* that passengers possess a reduced expectation of privacy just like drivers do with regard to property that they transport in a vehicle. For all the foregoing reasons, the court finds that the motion to suppress should be and the same is hereby denied and this matter will be confirmed for trial.

After the district court denied the motion to suppress, Campbell stipulated to a bench trial on the minutes of testimony. The court found Campbell guilty as charged, sentenced her to fourteen days in jail, and suspended the fine. Campbell now appeals.

## II. Scope and Standard of Review.

We review this case de novo because it "concerns the constitutional right to be free from unreasonable searches and seizures." *State v. Gaskins*, 866 N.W.2d 1, 5 (Iowa 2015). In a de novo review, "[w]e independently evaluate the totality of the circumstances found in the record, including the evidence introduced at both the suppression hearing and at trial." *Id*.

## III. Seizure and Search of the Purse.

The Fourth Amendment of the United States Constitution and article I, section eight of the Iowa Constitution protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Iowa Const. art. I, § 8. "'A warrantless search is presumed unreasonable' unless an exception applies." *Gaskins*, 866 N.W.2d at 7 (citation omitted). The recognized exceptions for warrantless searches include: "(1) consent search; (2) search based on probable

cause and exigent circumstances; (3) search of items in plain view; or (4) search incident to a lawful arrest." *State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001).

The State asserts the search of Campbell's purse was justified based on the second exception—probable cause and exigent circumstances. The State points to the discovery of the small amount of marijuana in a pill container during the inventory search as providing the probable cause to search Campbell's purse and the location of the pill container—Nourie's car—as providing the exigent circumstances. *See State v. Storm*, ___ N.W.2d ___, ___, 2017 WL 2822483, at *6, *14 (Iowa 2017) (retaining the automobile exception to the warrant requirement "at the present time"); *State v. Allensworth*, 748 N.W.2d 789, 796 (Iowa 2008) (concluding probable cause for an automobile exception search may "evolve from the discovery of contraband in the course of a proper inventory search" and noting "the only exigency required to justify a warrantless search of a vehicle is the vehicle's ready mobility"). In addition, when probable cause arises to search a vehicle for contraband, that search constitutionally extends to the property of passengers located in the vehicle without a need for probable cause to search the passenger specifically. *Houghton*, 526 U.S. at 307 (noting probable cause to search the vehicle for drugs occurred when the officers observed a hypodermic needle in the driver's shirt pocket, the officers then asked the passengers to exit the vehicle to conduct a search, and the passenger left her purse behind when exiting and holding "police officers with probable cause to search a car may inspect passengers' belongings *found in* the car that are capable of concealing the object of the search" (emphasis added)).

However, Campbell does not contest the deputy's ability to search her purse as a container in the car once probable cause was established through the discovery of marijuana. Instead, she contests the deputy's authority to order her to place her purse back in the car, making it subject to the inventory search, at a time when there was no probable cause to believe the purse or the vehicle contained anything illegal. She claims the deputy unlawfully seized her property by ordering her to place her purse back into the car, subjecting her property to the inventory search and then the later search under the automobile exception.[3]

"A seizure occurs when an officer by means of physical force or show of authority in some way restrains the liberty of a citizen." *State v. White*, 887 N.W.2d 172, 176 (Iowa 2016) (citation omitted). With respect to the seizure of property, a seizure occurs "when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). We evaluate the totality of the circumstances to determine whether a seizure has occurred. *White*, 887 N.W.2d at 176. Factors we consider include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or

---

[3] The State asserts Campbell did not preserve error on her claim of an illegal seizure of the property, so this assertion must be raised through an ineffective-assistance claim. However, we conclude Campbell did preserve error on this issue because she challenged the officer's "authority" to order her to place her purse back in the car in her written motion to suppress and asserted at the hearing on the motion that the evidence had to be suppressed due to the "illegal search and seizure." In addition, the district court in its findings on the record noted that Campbell was not given the option of either leaving her purse or taking it and leaving the area. The court also noted Campbell was not in custody and had not been charged with any offense at the time she was instructed to leave the purse behind. Thus, we conclude the issue was preserved for our review. *Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) ("Where the trial court's ruling, as here, expressly acknowledges that an issue is before the court and then the ruling necessarily decides that issue, that is sufficient to preserve error.").

the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* (citation omitted).

There is no question that the deputies seized both Nourie and Campbell when the officer initiated the traffic stop of Nourie's car based on the expired registration. *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013) ("A traffic stop is unquestionably a seizure under the Fourth Amendment."). Deputy Hodovic then made the decision to issue citations, rather than arrest Nourie, for the violations discovered during the stop, but he also made the decision to impound Nourie's vehicle. The deputies could then ask Campbell to step out of the vehicle for the purpose of completing the inventory search and impounding the vehicle in which she was sitting.[4] *Maryland v. Wilson*, 519 U.S. 408, 415 (1997) ("[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop.").

As she was removing herself from the car as instructed by the deputies, Campbell took her property—her purse—with her. She was then instructed by Deputy Sadler to put her purse back in the car. We conclude this was a seizure of Campbell's purse as the deputy removed it from Campbell's possession by instructing her to leave it behind and directing her where to place it. No reasonable person would have felt free to ignore the deputy's direction and retain possession of the purse. *State v. Lowe*, 812 N.W.2d 554, 570 (Iowa 2012) ("Encounters with the police remain consensual '[s]o long as a reasonable

---

[4] The car was being impounded, so Campbell would have needed to find alternate transportation to take her to her final destination. Prior to Campbell being removed from the car, Nourie had requested Deputy Hodovic drive him, and presumably Campbell, to Nourie's residence a short distance away, and the deputy agreed.

person would feel free to disregard the police and go about his business.'" (citation omitted)).

"[W]hen the police seize luggage from the suspect's custody, we think the limitations applicable to investigative detentions of the person should define the permissible scope of an investigative detention of the person's luggage on less than probable cause." *United States v. Place*, 462 U.S. 696, 708–09 (1983). For an investigative detention to lawfully occur, "the officer must be able to point to 'specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002) (citations omitted); *see also Terry v. Ohio*, 392 U.S. 1, 21 (1968).

> In determining the reasonableness of the particular search or seizure, the court judges the facts against an objective standard: "would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"

*Kreps*, 650 N.W.2d at 641 (citations omitted).

The deputies had no specific articulable suspicion that Campbell was committing a crime or was about to commit a crime. Instead, Deputy Sadler cited "officer safety" as the reason for preventing Campbell to maintain control of her property. *Terry* authorizes a search for weapons for officer safety, but only

> where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. . . . [T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific

> reasonable inferences which he is entitled to draw from the facts in light of his experience.

392 U.S. at 27. There is no evidence in the record that either deputy, at the time when Campbell was instructed to place her purse back in the car, had any specific and articulable facts to believe Campbell was armed with a weapon or that she presented a danger to the deputies. *See Ybarra v. Illinois*, 444 U.S. 85, 93–94 (1979) ("Nothing in *Terry* can be understood to allow a generalized 'cursory search for weapons' or indeed, any search whatever for anything but weapons. The 'narrow scope' of the *Terry* exception does not permit a frisk for weapons on less than reasonable belief or suspicion directed at the person to be frisked . . . ."). At that moment, she was merely a cooperative passenger seated in a vehicle that was being impounded for a registration violation.

We conclude the deputy's instruction for Campbell to place her purse back in the car was an illegal seizure of her property as it interfered with her possessory interest in her purse with no reasonable suspicion that the purse contained anything illegal or dangerous to the deputies. *See State v. Tanner*, 915 So. 2d 762, 764 (Fla. Dist. Ct. App. 2005) (concluding the holding of the driver's car for a dog sniff did not "authorize the deputies to deprive [the passenger] of her purse and, under the circumstances, detain her. '[She] did nothing to warrant her individual detention . . . nor was there an independent "reasonable suspicion" that her purse contained contraband'" (second alteration in original) (citation omitted)); *State v. Newsom*, 979 P.2d 100, 102 (Idaho 1998) ("Therefore, we conclude that when a passenger left the vehicle she was entitled to take her purse with her and was not required by *Belton* [search incident to

arrest of the driver] to leave it in the vehicle for the first officer to search."); *State v. Boyd*, 64 P.3d 419, 427 (Kan. 2003) (concluding the passenger's Fourth Amendment rights were violated when the officer directed the passenger to leave her purse in the vehicle upon exiting so the officer could execute a consensual search of the car and the officer lacked probable cause to believe the purse contained illegal drugs).

The State asserts that "[e]ven if Campbell's purse was unconstitutionally seized prior to the discovery of the marijuana, it ma[k]es little difference" because "[o]nce marijuana was discovered, the deputies had probable cause to arrest Campbell along with Nourie for possession of marijuana." The State cites the case of *Maryland v. Pringle*, 540 U.S. 366, 372 (2003), and claims it stands for the proposition that when illegal drugs are found in a car, the officers have probable cause to arrest all of the car's occupants. We first note that this justification for the search of Campbell's purse—search incident to arrest based on the discovery of the marijuana—was not asserted by the State in its resistance to the motion to suppress or at the hearing on the motion. Thus, this asserted justification for searching Campbell's purse is not preserved for our review. *Lamasters*, 821 N.W.2d at 862 ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)). Even if error was preserved on this claim, there are factual distinctions between *Pringle* and this case that warrant a different conclusion.

In *Pringle*, there was money found directly in front of Pringle in a glove box, and cocaine was found behind the back-seat armrest, which was accessible

13

to all three of the car's occupants. 540 U.S. at 371–72. Upon questioning, all three occupants failed to offer any information about the ownership of the cocaine or money. *Id.* The Court then concluded it was

> an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly.

*Id.* at 372.

In this case, the deputies, during the inventory search of Nourie's car, discovered trace amounts of marijuana contained within a marked prescription pill bottle located in the center console. Nourie admitted ownership of the pill bottle as having once contained medication prescribed by his doctor due to an injury, and he later admitted the pill bottle had at one time contained marijuana. Based on these facts, we cannot conclude that the deputies had probable cause to arrest Campbell, such that a subsequent search of her purse would have occurred. Thus, even assuming such a claim had been preserved, we reject it.

**IV. Conclusion.**

We conclude Campbell's purse was illegally seized when the deputy ordered her to place her purse back into the car as she was exiting. If the illegal seizure had not occurred, Campbell would have been permitted to remove her purse from the car and the purse would not have been a container in the vehicle subject to search under the automobile exception when probable cause to search later arose during the inventory search. Therefore, the evidence discovered during the search of her purse must be suppressed, and we reverse the district

court's ruling to the contrary.  We remand this case to the district court for further proceedings.

**REVERSED AND REMANDED.**