# IN THE COURT OF APPEALS OF IOWA

No. 22-0748
Filed June 21, 2023

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**JEREMIAH RAY JANES,**
     Defendant-Appellant.

_____

Appeal from the Iowa District Court for Dallas County, Terry Rickers, Judge.


The defendant appeals his conviction for possession of methamphetamine.

**AFFIRMED.**


Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.


Heard by Tabor, P.J., and Greer, Schumacher, Ahlers, and Badding, JJ.

**TABOR, Presiding Judge.**

Jeremiah Janes appeals his conviction for possession of methamphetamine with intent to deliver after the police arrested him and found the substance in his pocket. He contends the police officer's detection of marijuana odor in the hotel parking lot where he was standing did not provide reasonable suspicion to seize him. From there, he argues the search violated the Fourth Amendment of the United States Constitution and Article I, section 8 of the Iowa Constitution.

We find, even if the seizure were unreasonable, Janes could not lawfully resist his arrest. That resistance gave an independent basis to search, resulting in the discovery of the methamphetamine. So we affirm.

## I. Facts and Prior Proceedings

West Des Moines Police Officer Andrew Hofbauer was patrolling along Jordan Creek Parkway around 11:50 p.m. and circled the Motel 6 parking lot with his windows down to smell the air.[1] While going around the southeast corner of the motel, he "could smell an odor of marijuana and could see several people outside." Hofbauer circled a second time and noticed the marijuana smell especially at the southeast corner of the hotel. On his second lap, he saw two people standing next to a motorcycle and two other people next to a car parked a few spots away from the motorcycle. He parked his car and radioed for support officers on a "suspicious vehicle."

---

[1] Hofbauer testified he is assigned to the department's "entertainment response unit," which focuses on hotels, motels, and bars in the West Des Moines "entertainment district." The unit handles calls related to narcotics, prostitution, and other criminal activities.

Bypassing that vehicle, a Nissan Rogue, Hofbauer first approached the couple standing near the motorcycle. He would eventually identify them as Janes and Janes's friend, Hailey Rusk. While talking with them, the officer noticed "a strong odor of marijuana." He recalled that it was "stronger, more prevalent than when I was driving around the area." When asked whether he smelled burnt or raw marijuana, Hofbauer testified, "I can't distinguish or recall what the actual odor was, burned or raw."

Hofbauer asked Janes and Rusk for identification, but they refused. Janes asserted he was a "private American national," and chose not to "contract with" the law enforcement officer. Hofbauer responded:

> . . . Okay. Well, I'm gonna have you guys stay here until we can figure out where this odor of marijuana is coming from, okay? Because I have reasonable, articulable suspicion to believe that there's marijuana in this area and that you guys both are in the area where an odor of marijuana is coming from, okay?

Just as Hofbauer walked away, Officer Brandon Condon walked up to Janes and Rusk. Condon engaged them in conversation for about three minutes until Hofbauer returned. Condon asked Janes why he parked his motorcycle on the curb, too close to a fire hydrant. Condon also testified that he could smell marijuana "emitting in the area" during this conversation. A third officer, Jaime Ballesteros, likewise testified to smelling marijuana on the scene. None of the officers could specify if they smelled burnt or raw marijuana.

Meanwhile, Hofbauer spoke with the other two people in the parking lot. They both provided Hofbauer with identification, which he checked for warrants. And he decided the marijuana scent was not coming from them. Then he returned to Janes and Rusk. On Hofbauer's bodycam, Rusk can be seen setting down a

backpack she was wearing during their initial encounter. After reaching them, Hofbauer told Janes and Rusk, "I can smell marijuana right now" and hypothesized that it "poofed up" from Rusk's backpack.

Their conversation then turned back to the unauthorized spot where the motorcycle was parked before Hofbauer again asked for identification. When Janes remained recalcitrant, Hofbauer explained the reason for seizing Janes and Rusk was that he smelled marijuana "right here." Hofbauer also said he would arrest Janes for interference with official acts based on his refusal to show identification when "lawfully ordered" to do so. During this discussion, Janes disclosed that he had "paraphernalia" in his pocket, but he didn't believe that the officers could smell marijuana from it.

After roughly twelve minutes of back-and-forth, Hofbauer again expressed his intent to arrest Janes. Janes stated, "no you're not," and asked, "on what grounds?" Hofbauer replied "you're under arrest . . . for interference." Hofbauer, Condon, and Ballesteros then surrounded and advanced on Janes. Janes backed up shouting "don't touch me" and turned away, but was blocked by a railing. The officers wrestled Janes to the ground and handcuffed him. Janes at first kept his arms to his front so the officers could not cuff him. During the tussle, Hofbauer's body camera mount broke.

After taking Janes to the ground, officers searched his pockets, as well as Rusk's backpack. On Janes, they found a bag containing over 100 grams of methamphetamine and a pipe that appeared to have marijuana residue in it. Condon testified that the pipe could have been the source of the marijuana odor. Inside the backpack, officers found 2.3 grams of marijuana in a plastic bag, that

was inside a cloth case, that was inside of a purse. Condon also testified that he believed it "could be possible" to detect the smell of that amount of marijuana in that state of packaging from thirty feet away.

The State charged Janes with possession of methamphetamine with intent to deliver, as a class "B" felony, in violation of Iowa Code section 124.401(1)(b)(7) (2021), and failure to affix a drug tax stamp, a class "D" felony, in violation of Iowa Code sections 453B.1, .3, and .12. And it charged him as a habitual offender, in violation of section 902.8.[2]

Janes moved to suppress everything found after he was first seized by Officer Hofbauer. After a suppression hearing, where Janes represented himself, the court denied the suppression motion.

The State agreed to dismiss the tax stamp violation and reduce the possession charge to five grams or less, a "C" felony, in violation of Iowa Code section 124.401(1)(b)(6). In return, Janes waived a jury and agreed to a bench trial on the minutes of evidence. The court found him guilty as charged.[3]

Janes now appeals.

---

[2] In a separate case, the State charged interference with official acts and possession of drug paraphernalia but dismissed those counts at sentencing.
[3] Janes stipulated that he had two previous drug convictions and was subject to the habitual offender enhancement. *See* Iowa Code § 124.411. The court sentenced him to a term of not more than thirty years.

## II.      Scope and Standard of Review

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Hauge*, 973 N.W.2d 453, 458 (Iowa 2022). That review means we consider the entire record to independently evaluate the totality of the circumstances. *Id.* In doing so, we defer to the district court's fact determinations but are not bound by them. *Id.* "In our review of the suppression ruling, we consider not only the evidence at the suppression hearing but also the evidence at trial." *State v. Carter*, 696 N.W.2d 31, 36 (Iowa 2005).

## II. Discussion

Janes argues police officers seized him without reasonable suspicion or probable cause. In his view, the whiff of marijuana in an open-air parking lot occupied by several people was not particular enough for a seizure. And even if the odor did provide reasonable suspicion to seize him, Janes insists police went too far in detaining him for "a prolonged period of time without likelihood of furthering their investigation."

In his suppression argument, Janes relies on the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution.[4] Both documents protect individuals against unreasonable searches and seizures. *State v. Naujoks*, 637 N.W.2d 101, 107 (Iowa 2001). Evidence obtained following a violation of these constitutional protections is generally inadmissible at trial. *Id.* at

---

[4] Janes does not argue there is a different standard under the Iowa Constitution. "[I]n our discretion we choose to apply the federal framework . . . ." *State v. Baker*, 925 N.W.2d 602, 610 (Iowa 2019). But we may apply the federal framework in a different manner. *State v. Fogg*, 936 N.W.2d 664, 667 (Iowa 2019).

To justify an investigatory stop, an officer must have reasonable suspicion, backed by specific and articulable facts, to believe criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." *Alabama v. White*, 496 U.S. 325, 330–31 (1990) (cleaned up for readability) (citations omitted).

In denying the motion to suppress, the district court found that Officer Hofbauer possessed both reasonable suspicion to detain and probable cause to arrest Janes.[5] The reasonable suspicion was Hofbauer's "credibl[e] testi[mony]" that he smelled marijuana while driving through the parking lot "where [Janes] was located." The court reasoned that Hofbauer questioned other people in the parking lot and "eliminated them as potential sources of the marijuana aroma."

But Janes points out that Hofbauer detained him *before* confirming the other couple was not the source of the smell. According to Janes, he was seized when Officer Hofbauer told him to "stay here until we can figure out where this odor of marijuana is coming from." *See United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980) (holding that seizure occurs when a reasonable person under the circumstances would not feel free to leave).

Janes next focuses on particularity. He contends the smell of marijuana did not furnish reasonable suspicion because Officer Hofbauer never determined with any precision that the smell was coming from him. *See United States v. Cortez*, 449 U.S. 411, 417–18 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in

---

[5] The district court also found the officer had probable cause when Janes gave an "unprompted admission that he had illegal drug paraphernalia in his possession."

criminal activity. . . . [D]etaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.").

The State responds that the low bar of reasonable suspicion allowed the officers to detain Janes while they ruled out other possible sources of the odor. But the State's response does not end there. It goes on to offer alternative grounds for resolution. First, that the illegally parked motorcycle justified the seizure and request for identification. *See State v. Warren*, 955 N.W.2d 848, 860–62 (Iowa 2021) ([P]police officers have probable cause to stop a motorist if they witness the motorist commit a traffic violation" and traffic violations include parking violations.). And second, that Janes's interference with official acts—refusing to provide identification[6] and, later, resisting arrest—gave independent bases to take him into custody. The State asserts that Janes physically resisting the ultimate arrest falls under the "new crime" exception to the exclusionary rule. *See State v. Dawdy*, 533 N.W.2d 551, 555 (Iowa 1995) ("Even though an initial arrest is unlawful, a defendant has no right to resist the arrest. If the defendant does so, probable cause exists for a second arrest for resisting."); *see also United States v. Bailey*, 691 F.2d 1009, 1016–18 (11th Cir. 1982) ("[E]xtending the fruits doctrine to immunize a defendant from arrest for new crimes gives a defendant an intolerable carte blanche to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct.").

---

[6] For this point, the State cites *Hiibel v. Sixth Judicial District Court*, 542 U.S. 177, 180–81 (2004) ("A state law requiring a suspect to disclose his name in the course of a valid *Terry* stop is consistent with Fourth Amendment prohibitions against unreasonable searches and seizures.").

Having thoroughly reviewed the arguments and record, we choose to resolve this appeal on the State's final rationale. Because even if we were to decide that the seizure was unlawful, Janes could not lawfully resist the arrest.

We pause to address Janes's concern that the State did not preserve this rationale. Generally, we do not allow an appellee to urge a basis to affirm that it did not raise before the district court or that the district court did not have the chance to consider. *See DeVoss v. State*, 648 N.W.2d 56, 60–61 (Iowa 2002). In *DeVoss*, the supreme court recognized an exception for evidentiary rulings. *Id.* at 62–63. And our court has found in unpublished dispositions that a suppression ruling is an evidentiary ruling. *See State v. Boll*, No. 19-0487, 2020 WL 4200838, at *2, n.2 (Iowa Ct. App. July 22, 2020) (finding the State did not waive a suppression argument when raised for the first time in Boll's appeal and noting "[a] motion to suppress challenges the admissibility of evidence seized from a defendant; thus, we may affirm the suppression ruling on any ground appearing in the record, whether urged by the parties"); *State v. Rave*, No. 09-0415, 2009 WL 3381520, at *2–3 (Iowa Ct. App. Oct. 21, 2009) (noting "the [district] court's ruling on the motion to suppress was an evidentiary ruling" so the appellate court "may affirm on any ground appearing in the record").

In reply, Janes cites *State v. Bingham* where we stated we could "reverse the district court's suppression ruling on [a newly raised ground] only if the State sufficiently presented it to the district court." 715 N.W.2d 267, 271 (Iowa Ct. App. 2006). But *Bingham* was a State's appeal of a suppression grant, so it was incumbent upon the State to show it preserved error. *DeVoss* only allows us "to *sustain* an evidentiary ruling on any proper ground even if not urged in the district

court." *State v. Marcelino*, No. 18-0374, 2020 WL 564738, at *2 (Iowa Ct. App. Feb. 5, 2020). It does not allow us "to *reverse* the . . . ruling on a ground not raised." *Id.* Janes also cites *State v. Gaskins*, where the supreme court noted, "[t]he State did not assert any other theory or exception to the warrant requirement justified the warrantless search" of a locked safe within Gaskin's car. 866 N.W.2d 1, 4 n.3 (Iowa 2015). In that case, the county attorney only argued the search was justified as incident to arrest, and the State asserted no new grounds on appeal. *Id.* The majority found the search was not justified as incident to arrest and addressed no other grounds. *Id.* at 16–17. A dissent read *DeVoss* as allowing appellate courts to "affirm the district court's suppression ruling on any ground appearing in the record, whether urged by the parties or not." *Id.* at 44–45 (Waterman, J., dissenting). So Janes cannot rely on *Gaskins*.[7]

Moving to the merits, our courts have long held that "a person may not resist an arrest reasonably effected by one whom the arrestee knows or has good reason to know is a peace officer, despite legality or illegality of the arrest." *State v. Thomas*, 262 N.W.2d 607, 611 (Iowa 1978). As the State says, "[T]he proper place to fight the legality of the officers' action was inside the courtroom, not the parking lot . . . ."

---

[7] In *State v. Smith*, the supreme court reiterated, "[W]e may affirm a ruling on the admission of evidence by using a different rationale than relied on by the district court." 876 N.W.2d 180, 184 (Iowa 2016). But it recognized the rule is "discretionary" and cautioned "we must be careful not to exercise our discretion to decide an issue concerning the admissibility of evidence on an alternative ground when the parties have not had an opportunity to properly develop or challenge the foundation for the evidence." *Id.* In this case, the suppression issue is well-developed and appropriate for resolution.

The supreme court recently reaffirmed this principle in *State v. Wilson*. 968 N.W.2d 903, 918–19 (Iowa 2022). There, the supreme court found that police—responding to a noise complaint—illegally entered Wilson's home after she refused to give her real name. *Id.* at 907. When officers tried to arrest Wilson, she tossed a cocaine vial that she had been holding. *Id.* at 907. Then Wilson physically resisted her arrest. *Id.* at 908–09. The court determined that the evidence obtained as a result of the illegal entry must be suppressed. *Id.* at 917. Still, the court affirmed her conviction for interference with official acts for resisting the unlawful arrest. *Id.* at 917–18.

"A person commits interference with official acts when the person knowingly resists or obstructs anyone known by the person to be a peace officer, . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer . . . ." Iowa Code § 719.1(1)(a). Janes knew Hofbauer was a peace officer, and knowingly resisted the arrest by backing away and then keeping his arms down so the officers could not secure them behind his back. Janes's subjective belief that the arrest was illegal did not permit his resistance. And the State is correct that the officers gave Janes many chances to comply in a non-violent manner.

In the end, Janes cannot overcome the fact that he committed a new crime in physically resisting the arrest. The search of his person incident to arrest revealed the bag of methamphetamine. That evidence was admissible because of the new crime, even if the initial seizure were unlawful.[8] *See Dawdy*, 533

---

[8] For the same reason, it is also admissible whether or not there was probable cause to arrest based on his parking or his admission that he possessed a pipe.

N.W.2d at 555 (finding, after resisting the first arrest, "[a] search incident to the second arrest is lawful"). So we affirm Janes's conviction for possession of methamphetamine.

**AFFIRMED.**